670 Laura Fuller v. Administrator of the Estate of Joshua Fuller, Deceased, Appellant, by James LaFontaine v. Benny's Corner Bar and Grill, Inc. and Walker's, Inc., Appellees, by Greg Goss. Mr. LaFontaine. Thank you. Good morning, Judge Judges. Counsel, may it please the Court. My name is James LaFontaine. I'm the attorney for the plaintiff, Appellant Laurie Fuller. This is a dram shop matter. It's before the Court. It arises from a single vehicle accident in the early morning hours of April 15th or 16th, 2015, where subsequently the driver of that vehicle failed to get request assistance for his passenger who was ejected from that vehicle. We're here today because it is our position that the trial court erred when it granted the defendant's motion for summary judgment when there was evidence of consumption of alcohol by the driver of that vehicle, Mr. Nolan, as well as there was evidence of unusual behavior that evening, which raised genuine issues of material fact and which would preclude summary judgment being granted. So that night, there was a whole series of events. Mr. Fuller and Mr. Nolan were out drinking. Two of the locations that they visited were Benny's Corner Bar and Whoppers. It was the first and last. There was another place in the middle there, Elmwood Tap, where they drank over the period of four or five hours. It's not exactly clear on the record how long they were out. But at the last bar at Whoppers, Mr. Nolan, the driver of the vehicle, placed his feet up on a barstool that had been previously occupied by another patron. When that patron came out, there was an argument that ensued. They made up. He took his feet down. Subsequently, he put his feet back up. And according to the bartender, he put his feet up in the face of the other patron. There was another argument. Mr. Nolan decided he had had enough and he wanted to leave. He put his gear down and walked out of the bar with Mr. Fuller, squealed his tires out of that parking lot, and headed to a convenience store to get cigarettes. They were driving down a straight country road when he lost control of that vehicle, his truck, and flipped it in a cornfield. Mr. Fuller was ejected from that vehicle and had significant severe injuries as a result of that and essentially lay in a cornfield mortally wounded. Rather than call 911 or seek assistance for his friend, Mr. Fuller, who lay in the cornfield dying, he called his friends. He called his friends to come out with a skid steer and a truck to get his pickup truck out of the cornfield and put it on the back of a flatbed and take it to an apple orchard away from the scene. And he and one of the other gentlemen, there were three gentlemen that came to assist him, he and another gentleman loaded Mr. Fuller's body into the back of a pickup truck, drove to another county, backed that pickup truck to the front door, literally to the very front door of that residence, and then dragged Mr. Fuller's body into the residence and laid him on the floor. At no point in time did he call 911 or even try to take him to a hospital. They waited until approximately 9 o'clock the next morning before anyone notified authorities. And by that time, Mr. Fuller was deceased. These are the unusual facts. It's not any one fact, Your Honors, but this whole series of events that it was our position that precluded the trial court from granting a summary judgment. Looking at this, one would say certainly Mr. Nolan didn't act with ordinary care. Anyone acting with ordinary care would have called 911, would have sought medical assistance, and that certainly wasn't done here. There are cases that are out there, and I've looked at them all, that have held that unusual behavior occurred with much less than what occurred in our case, much less. Situations where someone had one drink and they drove over a bicyclist who was in the middle of the road and they smelled of alcohol. That was enough. Those three facts were enough to find that there was unusual behavior such to prevent the granting of summary judgment. That was Neef versus Sotos. In another case, Fulker versus Bartolome. A gentleman failed to use his turn signal, didn't notice an oncoming vehicle, and turned into a driveway instead of a roadway that he was very familiar with. Those three facts were enough to find that this was unusual behavior. Would this be, you know, with regard to the question whether a person is intoxicated or not, would that be, that this shouldn't be, barred the case where there's all this premeditated conduct at the time of the accident. I shouldn't use the word premeditated, but a clear conduct to hide all these circumstances. I mean, that's what's happening, right? Yes. There's all this, you know, clear planned conduct, calling friends, doing all this step by step, you know, changing the location of the body, preventing it to appear that it was an accident, all these kinds of things. Would that in and of itself negate that whole pattern of behavior, negate any suggestion that it was impairment? I don't believe so, Your Honor. I don't, and I understand what you're saying. And I do believe that Mr. Nolan, through his actions, was worried that he was going to get charged with a death DUI or a significant injury DUI charge if he were to call the authorities. I do believe that. And that is exactly what we would like to be able to present to a jury. It's an issue of fact that we believe that a jury should be able to listen to, hear, and decide whether those actions made him think that he was intoxicated at the time of the collision, at the time of the single vehicle rollover. Well, he's got to be more than intoxicated. He's got to be intoxicated on alcohol. That is correct, Judge. And was there evidence that this guy was a druggy? There is. There is. Well, there is evidence that subsequently, when the authorities were called, they did test him. And obviously enough time had gone by that the alcohol would have metabolized through his system. So he won that battle. He avoided a DUI, an alcohol DUI charge. They did find drugs in his system. And at the time of the state, and still is, at least with respect to things other than marijuana, is a zero tolerance. So any level of a drug in your system. So, yes, Judge, to answer your question. So, now as a jury, as soon as they say that this guy's on something, how are they going to determine whether it was drugs or alcohol that caused this accident without speculating? Well, Judge, there's testimony that he was drinking that night. And there's evidence of unusual behavior. I think that that's enough to create a genuine issue material fact that should go to a jury and let the jury decide whether or not they believe that. Well, drugs are known to cause unusual behavior too, correct? They are, Judge. So you've got an unusual behavior. You've got a guy that you know is a doper. And so the jury is sitting there. And how do they resolve that without pure speculation? Well, there is testimony that he had been drinking alcohol, Judge. I don't think that the jury has to speculate. I think that the jury would have enough information from which they could decide Mr. Nolan was intoxicated on alcohol, that alcohol played a contributing factor in this accident. Perhaps it was drugs and alcohol. I don't know. But I think that that's really the purview of the jury, and that's what we're saying. We lost the opportunity to present this to a jury. It's really a question of fact for a jury to decide, not for the court to decide. In the court here, Judge, found that there was no unusual behavior. And that's why I'm here, because I think if this is an unusual behavior, what is? Do you have anybody in the last saloon saying, gosh, he got caught in six beers in 25 or whatever, or appeared intoxicated when he went out the door? No, Judge. At the last saloon, Whoppers, the testimony is that he was only there about 10 minutes, give or take. It was very quick. In fact, the testimony is he probably had less than one beer at Whoppers because of the altercation or the dispute with this other patron where he put his feet up on the bar in the guy's face. That's unusual, I think, again. And I think that to answer your question, Judge, no, there isn't any testimony from those people saying that. But a plaintiff can prove intoxication by showing that there was consumption of alcohol and unusual behavior. There's no dispute that there was consumption of alcohol in this case. Really, the question before the court was at that saloon, Judge, at the very last saloon. There were five to six at the first saloon, and there's an unknown quantity at the middle saloon because they were there for a couple hours. But Mr. Nolan just couldn't remember how much he had to drink there. You know, to change gears just briefly on the second issue dealing with trying to add some people in, the Dram Shop Act is pretty clear about this one-year business, isn't it? It is, Judge. The Dram Shop Act is clear, but there is plenty of precedent, I believe, out there. And I want to say this. The trial court, I believe, thought that he couldn't really exercise any discretion because he believed that the Dram Shop Act just clearly said you've got to bring it within one year. But I think you misconstrued the statute and the law. After 1964, things changed with respect to whether or not we could amend complaints that involved statutory causes of action. In fact, this court has held in Wolf v. Redmore, I believe, that adding parties in a Dram Shop action is allowable, that you're not constrained by the Dram Shop Act. In Wolf v. Redmore, the court, this court, looked to Simmons v. Hendricks, which is a Supreme Court case from Illinois in 1965, where they also allowed the amendment. And again, back in 1965, it was a different statute. Now it's the amendment statute, 735 ILCS 5-2-616, that allows amendments. And it's very specific. It says. And in the statute, Your Honor, that the amendment of pleading shall not be barred by lapse of time under any statute, prescribing or limiting the time within which action may be brought or right asserted. It's very clear that this statute gives us the right, gives the trial court the right to do that, and is in line with the Simmons case, the Illinois Supreme Court case, and the case from the Third District, Wolf v. Redmore, which allows it as well. The focus really should be whether or not the defendant, the defendants in this case, were apprised within the one-year time frame of the occurrence and were able to investigate what occurred and formulate their defenses. And in this case, we did file the complaint within the one-year time prescribed by the Dram Shop. And the defendants had plenty of opportunity to investigate. They are not prejudiced in any way. Counsel has two minutes. I think I would like to point out that the court also, when the court denied the motion for leave to file the First Amendment complaint, relied on Demcheck. I'm sure counsel is going to talk to you about Demcheck. In Demcheck, it's a Supreme Court case as well, an Illinois Supreme Court case. The plaintiff was seeking to add new defendants, new defendants, 32 months after the occurrence, well outside the one-year statute of limitations. So again, going back to what the courts looked to, in Demcheck, the court said you can't do that. And I understand why, and I think that that's right. Those defendants didn't have the opportunity to investigate the occurrence and formulate their defense in a timely manner. But that's not what's happening here. So I distinguish Demcheck from our case. Bellevue Motors also addressed whether or not the one-year time limit would prevent us from being able to amend the complaint. And I think that clearly indicates that that's no longer there. They denounced conditioned precedents, and the court does have subject matter jurisdiction. So the court- What was the amendment? We were seeking to add additional parties, additional plaintiffs, the father and the siblings, as well as add Mrs. Fuller individually seeking loss of society. That was the amendment. And I believe that that was in the furtherance of justice and equity, and it should have been done. I know I only had two minutes, so did you, Your Honors, have any other questions for me at this time? No. You'll have a rebuttal. Okay, I appreciate it. Thank you. Is it Mr. Gass? Yes, Your Honor. May it please the Court, counsel. I am Greg Gass, and I represent the appellees. My apologies for being congested as soon as the temperature finally changed to wall weather. Of course, I'm congested the first day of all arguments. As a preliminary matter, before I get into the substance of the arguments and the case law, I need to address a preliminary issue. I have to make some corrections as to some misunderstandings or misstatements of the record and some irregularities that are within the record, because these are important, because a lot of the plaintiffs' or, excuse me, the appellant's arguments, their foundation is based on some of these mistakes and irregularities, so they need to be clarified before we get to the substance of the discussion. It was in the last briefing by the appellant, and you heard it today, that allegedly this alleged intoxicated driver put his feet in the face of another patron at the last saloon. That is not reflected in the record. Where it comes from, the pinpoint site, is unfortunately there was an ellipsis or a comma put in there, but what the former saloon bartender was saying was, after telling the story the second or third time, a deposition, that there was an argument caused by an unrelated patron towards the driver, because his feet was on a bar stool, and he was in his face. Not the feet was in his face. Tim Carver, this patron, was in the face of the driver over his feet being on a bar stool. Now, when you look at it, it's like, well, could you still read that to be in his face? And here's why you can't. If you look at pinpoint citations in the record, the same deponent posed earlier in the case when telling the story, on pages 493 and 494 of the common law record, he makes it clear that the driver's feet was on a bar stool, why this other individual was in the bathroom or elsewhere. All the other living people that were involved and witnessed this occurrence have also made statements or depositions that are in the record, and they all tell the story of, it was on a bar stool, they never mentioned it was in his face, it wasn't even in the seat. Also, when you combine that logically, if your feet are on a bar stool, how are you putting it in somebody's face? So the record just does not bear out that any feet were placed in anybody's face. In fact, the record disputes it. And strangely, the first time this argument was ever brought up was at the appellate level about the feet. Connected to that, it not only did not happen once, it definitely didn't happen twice. Looking at the record backwards and forwards many times, nowhere is in the record that he allegedly put his feet in some patron's face once and then went around and did it again. All the discussion in the record, and it's very clear by multiple people in the record, that this other patron got upset about feet on a bar stool that he thought was his bar stool while he was in the bathroom or in the jukebox. He initiated an argument with the driver, and then he initiated a second argument with the driver, because he was still aggravated about the first occurrence when the driver said, I've had enough of this, I'm leaving. There's also an insinuation through all the briefings that somehow the driver instigated or caused these, or initiated these verbal altercations with the patron. The record is clear that all these verbal altercations at the last saloon was caused by this unrelated patron over somebody commandeering his bar stool of choice while he was in the restroom. Another fundamental issue is the repeated use of inadmissible police records all throughout the briefing, and relied on many arguments in the briefing by appellant. This was addressed at the trial level during oral arguments. Police, and I'm giving exact statements if you want them, Your Honors, but generally there's case law, multiple cases that indicate that police reports are generally inadmissible as a substance of evidence. They can't be used to dispute motions for summary judgment. They're only applicable for past recollection recorded or to impeach. That's not the situation here. The appellant has significant citation to police records of hearsay statements of what people allegedly said that was summarized by police officers. So I would, according to discretion, I'd ask that they ignore those citations because it just, it can't be used to defeat motion for summary judgment. The last irregularity before I move on to the substantive arguments. There was an excerpt in the final briefing by appellant of Judge McCuskey. They have an argument that says abuse of discretion regarding the motion for leave to amend. It starts with three ellipses and has some things said by Judge McCuskey. If you read before those ellipses, the page before or a couple pages before, Judge McCuskey was editorializing how defense attorneys try to have alternative arguments. If you don't bite on this, maybe you'll bite on that. Try to get a judge to bite on something and issue a decision. So he sarcastically said that he told another attorney, he said, my last year I'm just going to grant all these motions and then someone else has to deal with it. I'm paraphrasing. Some other judge will have to deal with it when I'm not retired when it's sent back down if I grant all these. The insinuation in the brief is that Mr. McCuskey was saying that he's granting all defense motions and that's an abuse of discretion. When you read the record, it's clear he was directing this at defendant and it was sarcasm. Thank you. So moving on to the substantive arguments. We would ask that you affirm both orders in this case by Judge McCuskey. They're appropriate on the record. And starting with the summary judgment issue, there is no evidence whatsoever in the record of any admissible opinions or issues of intoxication. Just none. In fact, it's to the contrary. Witness at the last saloon said when all this was going on, when he left within a few minutes of the alleged car accident, he showed no signs of intoxication, no signs of intoxication. The driver said he wasn't intoxicated. There's just no evidence. McCuskey challenged the appellant. It's like where in the record? He says, I carefully read every deposition, every scrap of paper. Where is the evidence? So plaintiff-slash-appellant has tried to make this argument, well, look at unusual behaviors. Look at unusual behaviors because we don't have the opinion evidence. Well, there's the evidence with regard to it. I'm sorry? There's the evidence with regard to drinking. Correct. Yes, there's evidence of some drinking. And as the case law set out in our brief sets out, the black-letter law of Illinois is that because drinking affects every individual so differently, drinking enough is not alone, let alone admissible on its own. You can't in any kind of trial, dramshackle or otherwise, you can't introduce drinking without evidence of intoxication. And so in this case, yes, there was some that he had some here, he had half a beer at the last saloon, but no evidence of any intoxication. So appellant was trying to hang their hat on unusual behaviors are enough, and we have allegedly unusual behaviors here. Well, he said that there's certain cases that they've laid out in their briefing how this is enough to get you over that hurdle. He says those three facts are enough. And respectfully, that's just not true. I set this out in my own briefing, a detailed discussion of each case. And here's what the big themes of these cases are, because I only have so much time, but I'll be happy to answer any individual case. But there's three big categories of cases between all the briefing in this case, three big categories when it comes to intoxication or unusual behavior getting over the hurdle. First, there's a series of cases where that mere motor vehicle violations are not enough and an accident is not enough to prove intoxication even with drinking. So following too close and an accident happened and drinking, that's not enough to prove intoxication. Drinking and missing a curve, that was not enough to prove intoxication. The mere fact that an accident and there's drinking is not enough to prove intoxication, and we've set up multiple cases. The next group of cases, there's cases, and this is what appellant cited in some of these, and we further distinguish them in our briefing. There's another category of cases about car accidents where there is enough to say there's intoxication, but there is much more to these cases about that. For example, one case was somebody, not only was there drinking, somebody mistook a driveway for a turn that they'd been taking all their life. They also didn't use a blinker. They didn't do this. They didn't do that. There were several indicators that things that they didn't do in their entire life that they didn't have the comprehension to be able to do right before that accident. Another one was about a bicyclist in the road. You heard the appellant's attorney come up and tell you about this. Well, in that one, what the facts actually were in that one was other drivers were able to comprehend that driver and take evasive maneuvers, and witnesses were able to see before that accident happened that that driver, the alleged intoxicated driver, made no evasive maneuvers like the rest of the public did leading up to the accident, and he had been drinking, and there smelled alcohol. Therefore, they were able to put all that together, say that is an issue of fact if you're intoxicated, because there was a higher level of not comprehending what was going on. So the car wreck cases where they found intoxication, there was much more involved than just the fact that a wreck happened. You could even driving too fast. That's another example, drinking and driving too fast under the case law, not evidence of intoxication to create an issue of fact. The third group of cases that there could be an inference of intoxication that creates an issue of fact is senseless physical beatings and assault that come out of nowhere. Between the briefing of all parties in this case, some of those are set out. Those involve scenarios where there is no provocation. All of a sudden, it is a complete, brutal, senseless assault that no one can explain. For example, one of the cases in the briefing, some guy that had no connection whatsoever with his intoxicated assailant, all of a sudden he gets a beer bottle thrown across the tavern, crushed into his skull. Then the intoxicant runs around and just starts beating on him, and the evidence showed that there was no connection between the two men, no words said between the two men. Another example of senseless beating where you confer intoxication is a man asks for some napkins. All of a sudden, a guy that was slurring his speech pushed the man in the face and said, get out of here, and then proceeded to beat him over and over again for asking for napkins. There, it was a senseless beating and a slurred speech. Plaintiff appellant doesn't have any of this in this case. What he is trying to assert is that certain things rise to the level of unusual circumstances, and the trial court said no, that under the case law, it does not, because the case law also sets out, including the NAKIS case that plaintiff's counsel relies on, that case specifically sets out that under the circumstances of the factual scenario, you have to see if it's unusual or not. So plaintiff has tried to, one, say the driver's argument with Tim Carver at the last saloon over the bar stool, that's unusual circumstances. The case law, the record shows that he did not initiate the verbal assault. It was the other patron who was mad over his bar stool. The other patron initiated everything. Mr. Nolan said he had enough of it. He was mad. He admits he was mad. He had enough of it, got in his truck, squirreled his tires because his man had left. That doesn't show intoxication. The cover-up, well, yeah, he had drugs in the system, but we don't know why he covered up, and also there was multiple people involved in the cover-up. So are we saying all these people were intoxicated and that's why they're in the cover-up? The cover-up itself doesn't show intoxication. My time is short, so I'll move on to the leave to amend. It's a two-part argument. Abuse of discretion standard, it's broad. Judge McCuskey was able to look at it in this file that the attempt to add five new plaintiffs, five new plaintiffs, was a year and a half after the initial filing and over a year and a half after the statute of limitations ran. There was no explanation why these people weren't added before. There was no explanation why they couldn't argue loss of society before, why they waited so long, why they never tried to assert it. The other issue is Demchuk and the Belville case. This is Belville's. Demchuk supports the black-letter law, the four corners, excuse me, of the Dram Shop Act. The Dram Shop Act is explicit that if you want to bring a loss of society claim, you have to bring it initially or joined by motion within the time provided herein. The time herein in the statute is one year. The Supreme Court in Demchuk merely reflected that, saying you have to bring it in one year. And they set out how draconian that statute is because in that case, they set out minors and incompetents can't toll the Dram Shop statute. Appellant's entire argument is on that the Belville case somehow undoes that case, but that's not what happened. And Belville was a case under Motor Vehicle Franchise Act. That case was about whether subject matter jurisdiction was a jurisdiction, whether the statute of limitation was a jurisdictional prerequisite to suit for subject matter jurisdiction. After the court looked at the subject matter jurisdiction issue and found that that statute of limitation didn't stop them from doing that in the Motor Vehicle Franchise Act, then they went on to make an analysis of whether that statute of limitation was part of the elements of their cause of action. And they found that that statute of limitation was an ordinary statute of limitation that could be tolled, for example. There's no questions. I will exclude and ask you to affirm all the orders. I appreciate your time. Thank you. Mr. LaFontaise from above. Thank you. Your Honor, there is no bright line with respect to what's unusual behavior. There's just no bright line. I think that each court has to take each case and look at all of the facts and circumstances of the case. Whether he put his feet up on the bar or the bar stool, I don't think makes much of a difference here. If I misapprehended the facts of the case, my apologies. But my understanding was he put his feet up on the bar stool and the bartender said he put his feet up in his face. That's what he said. It doesn't matter who initiated it. He put his feet up. The guy could not complain. They spoke. They went back and forth. I think the unusual behavior here is a cumulative effect. Well, let me ask you this, though. I'm going to say that for you. So you're in a gin mill and somebody comes up and starts giving you a bad time and you decide, I'm just leaving. Don't even finish my beer. That's pretty rational, reasonable behavior, as opposed to a drunk who would say, let's go at it. Is it the choice to leave in the face of this conduct by this other person? Pretty rational behavior. Judge, I'm not saying that he took a swing at the guy with irrational behavior, but I'm saying that he put his feet up. He comes into a bar. There's a guy sitting on the bar stool. He goes to go to the bathroom. The guy puts his feet up on that guy's bar stool. And the guy comes back and he's like, hey, what's going on? That's what I'm saying is irrational or unusual. I'm sorry. It's unusual. And my understanding from reading the record was that they made up and then he put his feet back up and it started all over again. And that was the issue. They got into it and then he just said, well, I'm leaving. I want to get out of here. I've been drinking a long time. He'd been drinking four or five hours. He wanted to go home. But that's only one of many issues because then he spills his tires out of the parking lot. Again, taking just solely as just that, I'm not saying that that alone is unusual behavior. But then he drives down a straight road and loses control of his vehicle for really very little apparent reason. I mean, he came up with lots of excuses. But there was another car. He knew a deer. Nothing. His tire didn't blow. Loses control of his vehicle, flips it. And then I think the truly unusual behavior really is the cover-up, the failure to make a phone call to get medical assistance for your friend, your passenger who's ejected from the car and is dying in a cornfield, and calling your friends to come out. And before your two friends get there, you take the body of Mr. Fuller and load it into the back of a pickup truck. But two of the three guys that came out there didn't even know he was there. No one mentioned him to them. They didn't know. So there's this huge cover-up. And that's what I'm asking this Court to recognize, that that is the unusual behavior. It could be argued that was illegal, irrational behavior to prevent being charged with something. Correct, Judge. Yes. Because there's two sides to that. You could make your argument. You could also make the argument on the other side. Well, wait a minute. That all shows this guy is well enough. Thinking logically? Yeah. Well enough to do this whole thing, get friends, change the location of the body. So it's nothing about an accident on the road. It's, you know, show the cops. If there are two sides to that argument, is that what you're wanting us to represent? There's two sides to a jury? Yes, Your Honor. But that's all I'm asking this Court to recognize, that there is unusual behavior there and that we have the right because it creates a genuine issue of material fact and that the jury, that fact, whether or not Mr. Nolan was intoxicated is the province of the jury. And the jury should be able to make that decision. Counsel has one minute. Again, I just want to just touch on the other issue. Looking back at the record, I really do understand that. I think that the judge felt that he was hamstringed by just the jam shop statute, and he did, I think he misapplied gun check. And so I don't think he really exercised discretion. He didn't realize that he had discretion whether or not he could add parties or not. I really do believe that. And I think here it's clear to me in reading all the case law, including the Third District case and Simmons, that you followed, that we certainly are able to do that and that the interest of justice would have been furthered had we been allowed to add those parties, to add those claims for loss of society. Mrs. Fuller was already a plaintiff, although she was the administrator of the estate. She wasn't an individual plaintiff. And the defendants knew about these people from the get-go because there was an estate. So the ends of justice would have been furthered by allowing us to amend the complaint. In this case, I'm asking that Your Honors reverse the trial court's granting of summary judgment for the defendants. I'm asking that this Court reverse the trial court's denial of our motion for leave to file a First Amendment complaint. And I'm asking that this case be remanded for further proceedings and eventually trial. Thank you. Thank you, Mr. Aponte. Mr. Gass, thank you also. This matter will be taken under advisement. A written disposition will be issued. And right now we'll be on a brief recess for panel changes.